```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/15/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICKARDO ANTHONY KELLY,

                Petitioner,

-against-

JUDITH ALMODOVAR, Acting Field Office Director of the New York City Immigration and Customs Enforcement Office; TODD M. LYONS, Acting Director of the United States Immigration and Customs Enforcement Office; KRISTI NOEM, Secretary of Homeland Security, PAMELA BONDI, Attorney General of the United States, acting in their official capacities; DEPARTMENT OF HOMELAND SECURITY,

                Respondents.

25 Civ. 6448 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Petitioner, Rickardo Anthony Kelly, a forty-year-old Jamaican citizen seeking asylum in the United States, petitions for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). *See generally* Pet. (the "Petition"), ECF No. 1; Mem., ECF No. 5. Kelly contends that his detention on August 4, 2025, during "a routine ICE check-in at 26 Federal Plaza" in Manhattan, violated his Fifth Amendment right to due process. *See* Pet. ¶¶ 2, 4, 31. Kelly seeks immediate release from custody. *Id.* ¶ 7. For the reasons stated below, the Petition is GRANTED.[1]

## BACKGROUND

    In 2021, Kelly fled Jamaica after he was shot at ten times during an attack he claims was on account of his sexual orientation. *Id.* ¶ 1. He arrived in the United States on a tourist visa in May

---

[1] Having reviewed the Petition, the materials filed in support thereof, and Respondents' opposition and accompanying declarations, the Court finds that the Petition "present[s] only issues of law," and it may, therefore, be adjudicated without a hearing. 28 U.S.C. § 2243 (commanding courts to dispose of habeas petitions expeditiously, "as law and justice require").

2021 and filed an asylum application in November of that year.[2] Schuur Decl. ¶ 4, ECF No. 4. Since his application for employment authorization was granted soon after his arrival, Kelly has been employed as a security guard. *Id*. ¶¶ 4, 15; Mem. at 4; Pet. ¶ 1. His tourist visa expired on November 12, 2021. Resp. at 2, ECF No. 16.

In November 2023, Kelly pleaded guilty to disorderly conduct under N.Y. Penal Law § 240.20 and was sentenced to a one-year conditional discharge and seven days of community service, which he completed. Schuur Decl. ¶ 7; *see* Resp. at 3.

In January 2025, Kelly traveled to the United States Virgin Islands. Schuur Decl. ¶ 7. On January 10, he was detained by U.S. Customs and Border Protection officials prior to boarding his return flight to New York. Resp. at 3. The officials served him with a Notice to Appear ("NTA"), which charged him with removability under 8 U.S.C. § 1227(a)(1)(B) as a noncitizen who had remained in the United States for longer than authorized. *Id*. That same day, Kelly was released on his own recognizance and ordered to report to ICE's New York Field Office at 26 Federal Plaza for a check-in on February 10. *Id*.; Schuur Decl. ¶ 10. The Department of Homeland Security ("DHS") then filed the NTA in Immigration Court in New York on February 3, initiating removal proceedings against Kelly. Resp. at 3; Morrow Decl. ¶ 10, ECF No. 15. At the February 10 check-in, which was completed without incident, Kelly was informed that his next check-in was scheduled for August 4.[3] Schuur Decl. ¶ 10; Resp. at 4.

In May 2025, Kelly was "charged with assault in the third degree with intent to cause physical injury and harassment in the second degree with physical contact" in Criminal Court, Queens County. Resp. at 4; Schuur Decl. ¶ 11; *see* N.Y. Penal Law § 120.00(1); N.Y. Penal Law § 240.26(1). These

---

[2] Kelly refiled his asylum application on February 7, 2025. Mem. at 2.

[3] Kelly is scheduled for a master calendar hearing before an immigration judge on November 3, 2025. Schuur Decl. ¶ 9; Resp. at 3.

charges remain pending. Schuur Decl. ¶ 11. According to Respondents, ICE learned of the charges on May 21. Resp. at 4.

On August 4, 2025, Kelly and his lawyer appeared at 26 Federal Plaza for the scheduled check-in. Schuur Decl. ¶ 12. An ICE officer escorted them to a waiting room and instructed them to fill out a form with Kelly's personal information. Id. ¶ 13. After counsel informed the officer of Kelly's May 2025 charges, two officers escorted Kelly and his attorney to an adjacent room and informed them that Kelly would be detained because of the charges. Id. ¶¶ 13–14. One officer offered Kelly "the option to self deport to Jamaica for $1,000," which Kelly declined. Id. ¶ 18. The officers also provided Kelly with a Notice of Custody Determination, which Kelly signed and in which he requested a custody re-determination hearing before an immigration judge. Id. ¶ 17. The officers detained Kelly. Id. ¶ 22.

Kelly remained at 26 Federal Plaza from August 4 to August 8, and he describes conditions there as "unconscionable," "inhumane," and "horrific." ECF No. 14 at 1–2. ICE held him "in a crowded room with approximately 70 other detainees," and "[a]t times, the population swelled to approximately 100 detainees." Id. at 1. The room had only three toilets, with no doors, and no showers. Id. ICE did not provide Kelly with "clean clothes, toiletries, or any other way to maintain basic hygiene." Id. For four nights, he slept on the floor, without a blanket, "using only a thin emergency foil[] sheet for warmth." Id. ICE left the lights on until 2:00 a.m., and provided food only twice per day—"freeze-dried rice and beans, often cold." Id. Kelly, who is diabetic, was denied access to his diabetes medication and given a substitute that had previously caused him adverse effects. Id. During his five days at 26 Federal Plaza, he was allowed to make only one call that lasted less than two minutes. Id. at 1–2.

On August 8, ICE transferred Kelly to the Metropolitan Detention Center ("MDC") in Brooklyn, which is plagued by "near-perpetual lockdowns," "dreadful conditions," and systemic

3

delays in medical care.  ECF No. 14 at 2; *United States v. Chavez*, 710 F. Supp. 3d 227, 228 (S.D.N.Y. 2024).  Kelly spent four days at MDC, until August 11, when ICE transferred him to the Orange County Jail ("OCJ") in Goshen, New York.  ECF No. 20 at 1.  According to Respondents, "[a]lthough ICE had previously secured long-term accommodation[s] for [Kelly] at MDC starting August 8, on August 11, ICE became aware that [Kelly's] risk classification due to his May 2025 assault charge mandated that he be detained at OCJ, which can accommodate ICE detainees with higher risk classifications such as [Kelly]."  *Id*.  Respondents offer no details with respect to the "risk classification" or the nature of Kelly's May 2025 charges.

Kelly contends that his detention is part of DHS' recent nationwide policy "of sweeping up thousands of noncitizens while they are dutifully attending routine immigration court hearings and ICE check-ins."  Pet. ¶ 3.  He claims that, pursuant to that policy, he received no notice or an opportunity to be heard as to whether his detention was warranted.  *Id*. ¶¶ 33–41.  Respondents do not argue that Kelly did, in fact, receive notice or an opportunity to be heard.  *See generally* Resp.

## DISCUSSION

"[T]he Fifth Amendment entitles noncitizens to due process of law . . . whether their presence here is lawful, unlawful, temporary, or permanent."  *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020).  "Noncitizens are also entitled to challenge through habeas corpus the legality of their ongoing detention," including "the lawfulness of detention when it is first imposed."  *Id*.  "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review."  *Id.*

"These requirements take on particular significance when [the Court] consider[s] what actually happened to [Kelly].  He was not 'detained'; he was, in fact, incarcerated under conditions" that are substantially worse than "those imposed on criminal defendants sent to prison following convictions for violent felonies and other serious crimes.  But in sharp contrast to them, the 'sum total

4

of procedural protections afforded' to [Kelly] was far less." *Id.* at 850–51 (quoting *Boumediene v. Bush*, 553 U.S. 723, 783 (2008)).

"The Second Circuit has held that the *Mathews v. Eldridge*[, 424 U.S. 319 (1976),] balancing test applies when determining the adequacy of process in the context of civil immigration confinement." *Valdez v. Joyce*, No. 25 Civ. 4627, 2025 WL 1707737, at *3 (S.D.N.Y. June 18, 2025) (citing *Velasco Lopez*, 978 F.3d at 851). "The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id.* (citing *Mathews*, 424 U.S. at 335).

Kelly does not contend that greater "judicial-type procedures must be imposed upon [the] administrative action[s]" of ICE than those already required by law; he argues that the agency is obligated to comply with the procedures already in place, and its failure to do so amounts to a complete and arbitrary denial of due process. *Velasco Lopez*, 978 F.3d at 851 (quoting *Mathews*, 424 U.S. at 348); *see generally* Pet.

Respondents ask the Court to deny the writ of habeas corpus because, "when [Kelly] appeared at 26 Federal Plaza on August 4, 2025, ICE opted to detain [him] after conducting an individual assessment, which included reviewing his RAP sheet" listing the May 2025 charges against Kelly. Resp. at 12. But the mere "review" of a RAP sheet is not tantamount to an individualized assessment of a suspect's flight risk or dangerousness. If ICE wishes to detain a noncitizen under the detention authority provided by 8 U.S.C. § 1226(a), ICE must allow the noncitizen to "demonstrate to the satisfaction of the officer that [] release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. §§ 1236.1(c)(8), 236.1(c)(8); *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021). It is undisputed that Kelly was *not* allowed to

5

do this—indeed, the ICE officers merely informed Kelly that he would be detained, and when Kelly attempted to make his case, the officers shut him down, stating "that they had been instructed by their supervisors to revoke his release." Schuur Decl. ¶¶ 15–16. As in *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528, 2025 WL 1927931 (S.D.N.Y. July 13, 2025), Respondents here do not contend that ICE gave Kelly an opportunity to be heard or prior notice, do not deny the existence of the new detention policy described in the Petition and supporting submissions, and do not argue that Kelly poses a risk of flight or a danger to the community. *See id.* at *3; *see generally* Resp.

In light of the undisputed facts, there is no doubt that "Respondents' ongoing detention of [Kelly] with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates his due process rights." *Valdez*, 2025 WL 1707737, at *4. "In light of the deprivation of [his] liberty, formerly granted and approved by Respondents, the absence of any deliberative process prior to, or contemporaneous with, the deprivation, and the statutory and constitutional rights implicated, a writ of habeas corpus is the only vehicle for relief. It is, in essence, the most appropriate remedy." *Lopez v. Sessions*, No. 18. Civ. 4189, 2018 WL 2932726, at *15 (S.D.N.Y. June 12, 2018).

Respondents also contend that the writ should be denied for failure to exhaust administrative remedies. Resp. at 6–13. This argument lacks merit. The very nature of the Petition is that Kelly was detained pursuant to a policy that is defined by its systematic denial of the administrative remedy Respondents urge Kelly to pursue. *See Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (Sotomayor, J.) (as amended) (judicial exhaustion may be excused when "available remedies provide no genuine opportunity for adequate relief" or exhaustion "would be futile" (internal citation omitted)). Respondents suggest that any constitutional violation could be cured if Kelly requested a custody re-determination hearing before an immigration judge—a hearing that, to be sure, Kelly *did* request on the same day he was taken into custody. *See* Resp. at 6–13; Reply at 3 n.2. Such hearings,

6

however, are provided for the purpose of custody *re*-determination—a hearing held by an immigration judge after ICE makes its initial decision to detain. 8 C.F.R. § 236.1(d). Such a hearing is no substitute for the requirement that ICE engage in a "deliberative process prior to, or contemporaneous with," the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause. *Lopez*, 2018 WL 2932726, at *15; *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The suggestion that government agents may sweep up any person they wish and hold that person in the conditions in which Kelly was held without consideration of dangerousness or flight risk so long as the person will, at some unknown point in time, be allowed to ask some other official for his or her release offends the ordered system of liberty that is the pillar of the Fifth Amendment. *Velasco Lopez*, 978 F.3d at 851–52 (emphasizing that, under the *Mathews* balancing test, a petitioner's liberty interest is "the most significant liberty interest there is"); *Valdez*, 2025 WL 1707737, at *3–4. Respondents' suggestion that Kelly has an adequate remedy available to him rings hollow. Moreover, courts may excuse administrative exhaustion where the petitioner "has raised a substantial constitutional question," *Beharry*, 329 F.3d at 62 (citation omitted), as Kelly has here, *see Valdez*, 2025 WL 1707737, at *1 n.1. Kelly is, therefore, appropriately excused from exhausting administrative remedies.

Respondents emphasize that ICE has the statutory, discretionary authority to detain noncitizens like Kelly under 8 U.S.C. § 1226(a). *See generally* Resp. But the question is whether, in exercising that authority, ICE is required to adhere to the basic principles of due process. There is no dispute that it is. *Velasco-Lopez*, 978 F.3d at 850–51. Nor is there a dispute that it failed to do so here. Because "Respondents' ongoing detention of [Kelly] with no process at all, much less prior

notice, no showing of changed circumstances, or an opportunity to respond, violates his due process rights," *Valdez*, 2025 WL 1707737, at *4, the Petition must be granted.[4]

## CONCLUSION

For the reasons stated above, the Petition, ECF No. 1, is GRANTED. Respondents are ORDERED to immediately release Kelly from custody.

By **August 15, 2025**, Respondents shall certify compliance with this Order by a filing on the docket.

SO ORDERED.

Dated: August 15, 2025
New York, New York

ANALISA TORRES
United States District Judge

---

[4] Because the Court finds that Kelly is being held in violation of the Fifth Amendment and orders his release, it does not reach the other claims raised in the Petition.